No. 25-1802

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,
*Appellee*

vs.

JACOB LOGAN STONE,
*Appellant*

On Appeal from the United States District Court
For the Western District of Arkansas

Honorable Susan O. Hickey
Chief United States District Judge

BRIEF FOR APPELLANT

JAMES B. PIERCE
FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF ARKANSAS

**By:**  Anna M. Williams
Assistant Federal Public Defender
Office of the Federal Public Defender
112 W. Center Street, Suite 300
Fayetteville, AR 72701
(479) 442-2306
anna_williams@fd.org

## CASE SUMMARY AND REQUEST FOR ORAL ARGUMENT

This appeal in a criminal case seeks to vacate the order denying Appellant Jacob Logan Stone's motion for early termination of supervised release, and remand for reconsideration. Mr. Stone was originally sentenced to 150 months in prison and a lifetime of supervised release for distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). On June 23, 2020, the district court reduced his sentence to time served but left the lifetime of supervised release in place. Mr. Stone asserts that the court erred in denying the early termination of his term of supervised release.

Because this appeal presents nonfrivolous issues and because it is believed that oral argument would aid the court in its decisional process, oral argument is respectfully requested. *See* Fed. R. App. P. 34(a)(2). Mr. Stone submits that 10 minutes of argument per side (20 minutes total) will be needed.

Appellate Case: 25-1802   Page: 2   Date Filed: 07/10/2025 Entry ID: 5535937

# TABLE OF CONTENTS

**<u>Item</u>**                                                           **<u>Page(s)</u>**

Case Summary and Request for Oral Argument ............................................... ii

Table of Contents ........................................................................................ iii

Table of Authorities ..................................................................................... iv

Jurisdictional Statement ................................................................................1

Issue Presented for Review...........................................................................2

Statement of the Case ...................................................................................3

Summary of the Argument............................................................................10

Argument .....................................................................................................11

    I.   The District Court Erred In Denying Mr. Stone's Motion For
        Early Termination Of Supervised Release........................................11

Conclusion...................................................................................................24

Certificate of Service/Compliance .................................................................25

Appellate Case: 25-1802     Page: 3     Date Filed: 07/10/2025 Entry ID: 5535937

# TABLE OF AUTHORITIES

***Cases***                                                                           ***Page(s)***

*Pepper v. United States*, 562 U.S. 476 (2011) .......................................................19

*Tapia v. United States,* 564 U.S. 319 (2011) ............................................................5

*United States v. Alison*, 447 F.3d 402 (5th Cir. 2006) ............................................7

*United States v. Chaar*, No. 00 Cr. 217 (JGK), 2005 WL 1844773
(S.D.N.Y. Aug. 3, 2005) ...........................................................................................18

*United States v. Freeman,* No. 6:20-cr-60035 (W.D. Ark. Sept. 29, 2023) .........13

*United States v. Hall*, No. CR 90-24-BLG-BMM-JTJ
(D. Mont. Aug. 14, 2019) .........................................................................................17

*United States v. Hall*, No. CR-90-17-GF-BMM, 2019 WL 4164969
(D. Mont. Sept. 3, 2019), *aff'd,* 801 F. App'x 584 (9th Cir. 2020)......................17

*United States v. House*, 501 F.3d 928 (8th Cir. 2007) ...........................................11

*United States v. Johnson,* 529 U.S. 53 (2000)...................................................*passim*

*United States v. Kapsis*, No. 06 Cr. 827 (WHP), 2013 WL 1632808
(S.D.N.Y. Apr. 16, 2013).........................................................................................18

*United States v. Lester*, 92 F.4th 740 (8th Cir. 2024) ........................................2, 13

*United States v. Linker*, No. 2:11-cr-00038-HCM-FBS
(E.D. Va. June 14, 2016).........................................................................................18

*United States v. McKinney*, No. 2:15-CR-00113-RSL-1
(W.D. Wash. Oct. 3, 2022).......................................................................................17

Appellate Case: 25-1802    Page: 4    Date Filed: 07/10/2025 Entry ID: 5535937

*United States v. Mosby*, 719 F.3d 925 (8th Cir. 2013) ...............................2, 11, 14

*United States v. Norris*, 62 F.4th 441 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 546 (2024) ...........................................................................................11

*United States v. Ponce*, 22 F.4th 1045 (9th Cir. 2022) ..........................................16

*United States v. Sainz*, No. 11-CR-00640-BLF-3, 2022 WL 5052630 (N.D. Cal. Aug. 16, 2022) .................................................................................... 16-17

*United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014) ...........................................14

## <u>Statutes</u>                                                                                            <u>Page(s)</u>

18 U.S.C. § 2252(a)(2) ....................................................................... ii, 1, 3

18 U.S.C. § 2252(b)(1) ...................................................................... ii, 1, 3

18 U.S.C. § 3231 .........................................................................................1

18 U.S.C. § 3553(a) .............................................................. *passim*

18 U.S.C. § 3553(a)(1) .............................................................................12

18 U.S.C. § 3553(a)(2)(A) ......................................................... 5, 12, 15

18 U.S.C. § 3553(a)(2)(B) ........................................................................12

18 U.S.C. § 3553(a)(2)(C) .......................................................... 12, 23

18 U.S.C. § 3553(a)(2)(D) .......................................................................12

18 U.S.C. § 3553(a)(4) .............................................................................12

18 U.S.C. § 3553(a)(5) .............................................................................12

v

18 U.S.C. § 3553(a)(6) ................................................................12

18 U.S.C. § 3553(a)(7) ................................................................12

18 U.S.C. § 3582(c)(1) ..................................................................3

18 U.S.C. § 3583(c) ............................................................... 15, 22

18 U.S.C. § 3583(e)(l) ........................................................... *passim*

18 U.S.C. § 3583(e)(2) ................................................................21

18 U.S.C. § 3583(k) ......................................................................7

28 U.S.C. § 1291 ..........................................................................1

## *Rules*

Fed. R. App. P. 4(b)(1)(A)(i) ........................................................1

Fed. R. App. P. 32(a)(7)(B) .........................................................25

Fed. R. App. P. 34(a)(2) ............................................................. ii

## ***United States Sentencing Guidelines***

U.S.S.G. § 5D1.2 .......................................................................21

U.S.S.G. § 5D1.2 cmt. n.1 ..........................................................22

U.S.S.G. § 5D1.2, cmt. n.5 ..........................................................13

U.S.S.G. § 5D1.4 (effective Nov. 1, 2025)....................................21

Appellate Case: 25-1802     Page: 6     Date Filed: 07/10/2025 Entry ID: 5535937

## Secondary Sources

H.R.Rep. No. 108–66 (2003) (conf. rep.), *reprinted in* 2003
U.S.C.C.A.N. 683 ..................................................................................7

S. Rep. No. 98-225 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182 .....................19

U.S. Sentencing Comm'n, *2025 Amendments to the Sentencing Guidelines*
(Apr. 2025) ...................................................................... 21-22

U.S. Sentencing  Comm'n, U.S. Sentencing Comm'n, *Federal Offenders
Sentenced to Supervised Release* (July 2010).........................................15

U.S. Sentencing  Comm'n, *Federal Sentencing of Child Pornography Non-
Production Offenses* (June 2021) .............................................4-5, 15-16

vii

Appellate Case: 25-1802    Page: 7    Date Filed: 07/10/2025 Entry ID: 5535937

## JURISDICTIONAL STATEMENT

This appeal in a criminal case seeks relief from the order denying Appellant Jacob Logan Stone's motion for early termination of supervised release entered by the Honorable Susan O. Hickey, Chief United States District Judge for the Western District of Arkansas. Mr. Stone was originally sentenced to 150 months imprisonment, a term of supervised release for life, a $5,000 fine, and a $100 special assessment for distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). (R. Doc. 19; ADD. 4). On June 23, 2020, the court granted a sentence reduction to time served. (R. Doc. 66; ADD. 10).

The order denying his motion for early termination of supervised release was entered on April 7, 2025. (R. Doc. 75; ADD. 1). The notice of appeal was timely filed on April 16, 2025. (R. Doc. 76). The district court had subject-matter jurisdiction pursuant to 18 U.S.C. § 3231. This Court possesses jurisdiction pursuant to 28 U.S.C. § 1291, giving it jurisdiction over all final decisions of the district courts of the United States. This appeal from the district court's order in this case is brought as a matter of right pursuant to Fed. R. App. P. 4(b)(1)(A)(i).

1

## ISSUE PRESENTED FOR REVIEW

**I. The District Court Erred In Denying Mr. Stone's Motion For Early Termination Of Supervised Release.**

Apposite Cases and Statute

18 U.S.C. § 3583(e)(l)

*United States v. Johnson,* 529 U.S. 53 (2000)

*United States v. Lester,* 92 F.4th 740 (8th Cir. 2024)

*United States v. Mosby,* 719 F.3d 925 (8th Cir. 2013)

## STATEMENT OF THE CASE

### I.     Underlying Sentence and Amended Judgment

On December 9, 2009, Mr. Stone was named in a 15-count indictment in the Western District of Arkansas charging him with 13 counts of receiving child pornography, and two counts of distributing child pornography, all in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). (R. Doc. 1). On February 4, 2010, Mr. Stone pleaded guilty to count six, which charged him with distributing child pornography. (R. Docs. 14-15). He was sentenced on July 13, 2010, to 150 months imprisonment, a term of supervised release for life, a $5,000 fine, and a $100 special assessment. (R. Docs. 17, 19; ADD. 4). On June 23, 2020, the district court entered an order reducing his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1) based upon the extraordinary and compelling reasons posed by the COVID-19 pandemic and his serious health conditions. (R. Docs. 65-67; ADD. 10). The time remaining on his sentence was approximately two months. (R. Docs. 59 & 65).

### II.    *Pro Se* Motion to Terminate Supervised Release, Government Response, and *Pro Se* Reply

Mr. Stone filed a *pro se* motion for early termination of supervised release on March 13, 2025, due to his exceptional circumstances and his lack

of violations during his more than four-year period of supervision. (R. Doc. 69, pp. 1-2). He pointed out that he had satisfied all of his court-ordered fines and costs. (*Id.* at 2). He argued that "[p]ursuant to 18 U.S.C. § 3583(e)(l), the Court has discretion to terminate a term of supervised release after one year if such action is warranted by the conduct of the defendant and the interest of justice." (*Id.*). He contended that supervised release was not meant to be additional punishment, but as a transitional, rehabilitative tool. (*Id.* at 3) (citing *United States v. Johnson,* 529 U.S. 53, 59 (2000)). Indeed, once its rehabilitative purpose has been accomplished, continued supervision serves no meaningful purpose.

He argued that early termination of supervision was appropriate in his case because he had "fully complied with all conditions for over four years, completed treatment with a low risk of recidivism, maintained stable employment, and reintegrated into society." (*Id.* at 2). In support, he pointed out that recidivism data provided by the United States Sentencing Commission found that the overall recidivism rate for non-production child pornography offenses was 27.6 percent, with sexual recidivism rates falling to 4.3 percent. (*Id.* at 4) (citing U.S. Sentencing Comm'n, *Federal Sentencing of*

Appellate Case: 25-1802    Page: 11    Date Filed: 07/10/2025 Entry ID: 5535937

*Child Pornography Non-Production Offenses,* at 7 (June 2021) (hereinafter "*Federal Sentencing of Child Porngraphy*")).[1] He contended that his term of supervision was an outlier, because only 15 percent of similarly situated defendants received lifetime supervision. (*Id.* at 5, 18). Moreover, he argued that the United States Congress expressly excluded "18 U.S.C. § 3553(a)(2)(A) from consideration under § 3583(e), reinforcing that courts may not base decisions regarding supervised release on the seriousness of the original offense, the need to promote respect for the law, or just punishment." (*Id.* at 6). He pointed out that the United States Supreme Court, in dicta, recognized in *Tapia v. United States,* that courts may not consider retributive goals when imposing supervised release (a principle equally applicable to its termination). 564 U.S. 319, 326 (2011).

He asserted that during his incarceration, he pursued educational, financial, psychological, and personal development programs to ensure his success upon release from the Bureau of Prisons ("BOP"). (R. Doc. 69, p. 7). For example, he completed thousands of hours of programming and earned

---

[1] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf

Appellate Case: 25-1802    Page: 12    Date Filed: 07/10/2025 Entry ID: 5535937

an associate's degree through correspondence while in prison, and a Bachelor's of Science degree in supply chain management after his release. (*Id.* at 7, 9). Upon his early release from the BOP, he self-enrolled in therapy sessions and was able to maintain an intimate relationship for four years. (*Id.* at 8-9). He also founded a business providing website and graphic design services and has contributed to his community by co-launching a 12-step recovery program for people overcoming addiction through his church. (*Id.* at 9). He now has a demonstrated history of progress through positive personal and emotional growth.

He further pointed out that as a registered sex offender, he is subject to ongoing monitoring regardless of federal supervision. (*Id.* at 11). Moreover, the Sentencing Commission's forthcoming amendments emphasize that supervised release should not be indefinite or punitive but rather should serve a rehabilitative function. (*Id.* at 12). The Commission now recommends that courts reconsider the necessity of continued supervision on a case-by-case basis and terminate supervision when it no longer serves a meaningful purpose. (*Id.*). As proof of his rehabilitation, he

Appellate Case: 25-1802     Page: 13     Date Filed: 07/10/2025 Entry ID: 5535937

included letters of support and completion certificates for education and treatment programs as exhibits. (*Id.* at 16).

In response, the Government objected to Mr. Stone's early termination of supervised release because it serves as part of his punishment and protects society from him. (R. Doc. 73, p. 5). It argued that 18 U.S.C. § 3583(k) was enacted for a specific purpose, namely

> long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison. The current length of the authorized supervision periods is not consistent with the need presented by many of these offenders for long-term and in some cases, life-long monitoring and oversight.

(*Id.*) (citing *United States v. Alison*, 447 F.3d 402, 406 (5th Cir. 2006) (quoting H.R.Rep. No. 108–66, at 49–20 (2003) (conf. rep.), *reprinted in* 2003 U.S.C.C.A.N. 683, 684). The Government argued that Mr. Stone posed a more significant risk than other child pornography offenders because he had a history of offenses against minor males, including sexual contact with 15-year-old boys when he was 21 years old. (*Id.* at 8-9). It argued that the Sex Offender Community Notification Assessment ("SOCNA") had assessed

7

him as a Level 3 sex offender, which is considered a high-risk offender, with Level 4 being the highest level. (*Id.* at 10). It noted that his continued treatment, employment, and education did not overcome his potential threat to the public. (*Id.* at 11).

In his reply, Mr. Stone argued that the SOCNA report supplied by the Government contains allegations and admissions that never resulted in a prosecution or a violation. (R. Doc. 74, p. 2). He contended that § 3583(e)(l) explicitly focuses on the conduct of the defendant during release, not conduct already punished by the original sentence. (*Id.*). Mr. Stone asserted that he had completed over four years of supervision without a single violation, and public safety is ensured by sex offender registration laws. (*Id.* at 2-3).

### III. Order Denying Motion For Early Termination Of Supervised Release

On April 7, 2025, the district court issued its order denying Mr. Stone's motion for early termination of supervised release. (R. Doc. 75; ADD. 1). Although Mr. Stone is eligible for a reduction or early termination of his supervised release, the district court found that his "offense conduct and history justifies the indefinite term of supervision for the protection of the

public." (*Id.* at 3; ADD. 3). In support, the district court noted that it had consulted with the United States Probation Office, who stated that Mr. Stone had complied with all conditions of release, maintained stable employment, obtained a bachelor's degree, and completed a rehabilitation program. (*Id.* at 2; ADD. 2). The probation officer did not recommend terminating supervision but was unopposed to a reduction to the term. (*Id.*). However, after considering the 18 U.S.C. § 3553(a) factors, the district court determined that termination of supervised release was inappropriate. (*Id.* at 2-3; ADD. 2-3).

This appeal follows.

9

## <u>SUMMARY OF THE ARGUMENT</u>

Mr. Stone is eligible for the early termination of supervised release and has proven there is no further societal, legal, or factual benefit to his continued placement on supervision. This is considering the statutory language, the various authorities, and an individualized analysis of his case. During his imprisonment and continuing after his release from prison, Mr. Stone has completed many hours of educational, psychological, and personal development programs to ensure his successful reintegration into society. This includes obtaining a Bachelor's of Science degree in supply chain management and the successful completion of sex-offender therapy after his release from prison.

## ARGUMENT

### Standard of Review

The Court reviews for "abuse of discretion a district court's denial of a motion to modify the terms of supervised release, including a motion for early termination of supervised release." *United States v. Norris*, 62 F.4th 441, 449–50 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 546 (2024) (citing *United States v. Mosby*, 719 F.3d 925, 930 (8th Cir. 2013)). The district court has "broad discretion in this area" and "is in the best position to evaluate the circumstances of each individual defendant." *Id.* However, the Court reviews questions of statutory construction, including those regarding supervised release, *de novo. United States v. House*, 501 F.3d 928, 929 (8th Cir. 2007).

### Discussion

### I. The District Court Erred In Denying Mr. Stone's Motion For Early Termination Of Supervised Release.

The district court may grant early termination of the remainder of the defendant's supervised release sentence "at any time after the expiration of one year of supervised release. . .", if, after consideration of specified factors contained in § 3553(a), the court is satisfied that "such action is warranted

11

by the conduct of the defendant released and the interest of justice." *See* 18

U.S.C. § 3583(e)(1). By its plain language, § 3583(e) requires the district court

to consider certain factors when it chooses to terminate a supervised-release

term or modify the supervised-release conditions, such as:

1) the nature and circumstances of the offense and the history and characteristics of the defendant;

2) the need for the sentence imposed to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) the kinds of sentence and the sentencing range established for the applicable category of offense . . . as set forth in the guidelines;

4) any pertinent policy statement;

5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

6) the need to provide restitution to any victims of the offense.

18 U.S.C. §§ 3553(a)(1),(a)(2)(B)-(D), (a)(4)-(a)(7).

Here, the district court cursorily mentioned the factors in denying Mr.

Stone's motion for early termination of supervised release. Mr. Stone

maintains that the district court should focus on his progress and lack of

Appellate Case: 25-1802   Page: 19   Date Filed: 07/10/2025 Entry ID: 5535937

violations, rather than his offense conduct for which he has already been punished. The lifetime term of supervised release was imposed before he had been rehabilitated and does not leave room for him to grow and change as a person. Indeed, in *United States v. Lester*, the Court clarified that even individuals subject to a mandatory minimum term of supervised release are eligible to seek early termination under § 3583(e)(l) after just one year. 92 F.4th 740, 742-43 (8th Cir. 2024). District courts have exercised their discretion under § 3583(e)(l) to terminate supervised release for a sex offender who was convicted of possession of child pornography. *See United States v. Freeman*, No. 6:20-cr-60035 (W.D. Ark. Sept. 29, 2023).

The Guidelines encourage courts to exercise the authority of § 3583 in appropriate cases. U.S.S.G. § 5D1.2, cmt. n.5. For example, if a defendant is a narcotics user who successfully completes a treatment program, early termination of supervision may be appropriate. *Id. See also Lester*, 92 F.4th at 742-43 (court's statutory authority to grant early termination pursuant to § 3583(e)(1) supersedes original sentence imposed pursuant to a mandatory minimum term). Successful reintegration into society via supervised release is distinct from the punitive nature of BOP placement. "Supervised release

13

fulfills rehabilitative ends, distinct from those served by incarceration." *Mosby*, 719 F.3d at 929; *Johnson*, 529 U.S. at 59.

Mr. Stone asserts, with significant documentation and history provided in his *pro se* motion, that he is well educated, has satisfied his supervised release conditions in all aspects, and has fully completed sex-offender treatment after which he was considered to be "at low risk of recidivism." (R. Doc. 69). "Reducing recidivism is the main purpose of supervised release." *United States v. Siegel*, 753 F.3d 705, 708 (7th Cir. 2014). Mr. Stone has shown that he is no longer a risk to the public either factually or as suggested by any empirical method. The district court noted that the probation officer agreed he had complied with all conditions of supervision, maintained stable employment, and completed a rehabilitation program after his release from prison. (R. Doc. 75, p. 2). Further, he provided certificates of completion for sex offender programs, and he was determined to be a low risk for recidivism. (R. Doc. 69, pp. 29-30). Mr. Stone has spent his post-incarceration time in therapy and in self-improvement. (*Id.*). He has maintained steady employment while also founding a graphic design and website business. (*Id.* at 9).

14

Mr. Stone notes among the § 3553(a) factors *not* to be considered in determining whether to modify the term of supervision, is "the need. . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A); *see* U.S. Sentencing Comm'n, *Federal Offenders Sentenced to Supervised Release,* at 9 (July 2010)[2] ("The legislative history indicates that section 3553(a)(2)(A) was not included for consideration under 18 U.S.C. § 3583(c) because the primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than punish them.)". Thus, it is focused on post-conviction conduct. In this case, the goal of supervised release is complete, as Mr. Stone has successfully integrated into society.

Mr. Stone is concerned that the district court put undue weight on the nature of his offense, as if there will never be a case in which someone convicted of distribution of child pornography would ever qualify for early termination of supervision. Mr. Stone suggests the empirical studies reveal that recidivism rates are rather low. *See Federal Sentencing of Child*

---

[2] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2010/20100722_Supervised_Release.pdf

15

*Pornography,* at 13. The Commission found that the overall recidivism rate for non-production child pornography offenses was 27.6 percent, with sexual recidivism rates falling to 4.3 percent within the three-year period following a defendant's release from prison. *Id.*

The Court of Appeals for the Ninth Circuit in *United States v. Ponce,* determined that exceptional behavior is not required for the termination of supervised release. 22 F.4th 1045 (9th Cir. 2022). Notably, high marks for rehabilitation is a primary factor in evaluating an early termination motion. For example, in *United States v. Sainz,* the defendant had a serious criminal history, but despite government opposition he received early termination because he served a lengthy incarceration, had a skilled profession, and without supervision he could obtain a contractor's license. No. 11-CR-00640-BLF-3, 2022 WL 5052630, at *3 (N.D. Cal. Aug. 16, 2022). Sainz had

> re-integrated into society, complied with all conditions of supervision, and ha[d] not given any indication that he pose[d] a risk to the community. [He] maintained his sobriety, purchased a home, and successfully worked at a skilled profession. He seeks to better his career options by obtaining a contractor's license, but it appears that being on supervised release is an impediment to that goal.

16

*Id.* at *2. In *United States v. McKinney*, the defendant's criminal history involved felony drug convictions and prior sexual offenses. No. 2:15-CR-00113-RSL-1 at *1 (W.D. Wash. Oct. 3, 2022). The court sentenced him to 97 months of incarceration followed by 15 years of supervised release. *Id.* The court granted the unopposed motion for early termination based on the defendant's: 1) conduct and the interest of justice; 2) seven years of supervision without violations; 3) low level of supervision; (4) completion of sex offender treatment; (5) steady employment and stable home; and (6) volunteering in his community. *Id.* at *2. In another case, a defendant was originally convicted of aggravated sexual abuse and later revoked for substance abuse violations. *United States v. Hall*, No. CR 90-24-BLG-BMM-JTJ at *4 (D. Mont. Aug. 14, 2019). However, the magistrate judge recommended in its report that the district court "should consider an early termination of [his] supervised release if he successfully completes his sex offender treatment program while on supervised release."[3] *Id.* at *4.

---

[3] The findings and recommendation was later adopted in full by the district court. *United States v. Hall*, No. CR-90-17-GF-BMM, 2019 WL 4164969, at *1 (D. Mont. Sept. 3, 2019), *aff'd,* 801 F. App'x 584 (9th Cir. 2020).

Appellate Case: 25-1802   Page: 24   Date Filed: 07/10/2025 Entry ID: 5535937

Generally, the courts have ordered early termination where a defendant has complied with all the terms of supervised release, performed all relevant conditions, exhausted available rehabilitative programming, and demonstrated that he does not represent a danger to the community. *See, e.g., United States v. Chaar*, No. 00 Cr. 217 (JGK), 2005 WL 1844773, at *1 (S.D.N.Y. Aug. 3, 2005) (granting early termination where the enumerated conditions were met and supervision potentially interfered with work opportunities); *United States v. Kapsis*, No. 06 Cr. 827 (WHP), 2013 WL 1632808, at *1 (S.D.N.Y. Apr. 16, 2013) (finding early termination warranted based on defendant's steady employment, successful completion of treatment, and lack of law enforcement contact); *United States v. Linker*, No. 2:11-cr-00038-HCM-FBS, at *4-5 (E.D. Va. June 14, 2016) (despite criminal history, early termination of supervised release granted because he served almost half his supervision term, probation approved the motion, he was compliant in prison and on supervision, he received corrective treatment and completed drug rehabilitation program, and he was financially responsible).

Mr. Stone's circumstances are similar to these defendants. His rehabilitation is both clearly substantiated and completed, indicating that there is no longer any justifiable need for continuing supervision. *See Pepper v. United States*, 562 U.S. 476, 502 n.15 (2011) ("Supervised release follows a term of imprisonment and serves an entirely different purpose than the sentence imposed under § 3553(a)"); *Johnson*, 529 U.S. at 59 ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."). Currently, Mr. Stone's supervised release conditions are not rehabilitative, but merely punitive.

Congress intended supervised release to assist individuals in their transition to community life. *See* S. Rep. No. 98-225, p. 124 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3307 (declaring that "the primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release"). Sentencing courts, in determining the conditions of a defendant's supervised release, are required to consider,

19

among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." 18 U. S. C. § 3553(a). These conditions illustrate that supervised release, unlike incarceration, provides individuals with post-confinement assistance. *See Johnson*, 529 U.S. at 60 (describing supervised release as a unique method of post-confinement supervision invented by Congress for a series of sentencing reforms).

The Commission sought to address, in the forthcoming amendments, potential issues surrounding the fact that the terms and conditions of supervised release are imposed at original sentencing, often years before the defendant begins supervision. People and their circumstances may change in and after prison, such that the original term and conditions may no longer be appropriate after the defendant's release. Courts are encouraged to consider modifying the terms and conditions of supervised release whenever changed individual circumstances so warrant. While commentary

to U.S.S.G. § 5D1.2 currently notes the court's authority to terminate or extend supervised release and encourages courts to "exercise this authority in appropriate cases," the amendment adds a new policy statement at U.S.S.G. § 5D1.4 (effective Nov. 1, 2025) to more directly address a court's statutory authority to modify conditions or to terminate or extend the term of supervised release.

Subsection (a) (Modification of Conditions) restates the court's authority under 18 U.S.C. § 3583(e)(2) to modify, reduce, or enlarge the conditions of supervised release and encourages the court to conduct an individualized assessment, in consultation with the probation officer, to determine whether any change to the conditions is warranted after a defendant's release from imprisonment. U.S. Sentencing Comm'n, *2025 Amendments to the Sentencing Guidelines*, at 54 (Apr. 2025).[4]

> Considering early termination at appropriate intervals will help ensure that resources are allocated to the individuals most in need of continued supervision and that the term is "sufficient, but not greater than necessary" to fulfill the purposes of imposing supervision.

---

[4] https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202505_Amendments.pdf

21

*Id*. (citing 18 U.S.C. § 3583(c); 18 U.S.C. § 3553(a); U.S.S.G. § 5D1.2 cmt. n.1).

Proposed application Note 1(B) specifies factors a court might consider in determining whether to terminate the remaining term of supervised release:

> (i) any history of court-reported violations over the term of supervision;
>
> (ii) the ability of the defendant to lawfully self-manage (*e.g.,* the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);
>
> (iii) the defendant's substantial compliance with all conditions of supervision;
>
> (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;
>
> (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and
>
> (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

*Id*. at 35.

Mr. Stone notes that most of these factors focus on post-imprisonment conduct. He submits that he meets the requirements for early termination of supervised release because he has no supervised release violations and he has taken numerous rehabilitative programs. Indeed, he has essentially exhausted the programing available to him. Further, he has advanced his education, is gainfully employed, and has satisfied his financial obligations in this case. In addition, he is in a steady, committed relationship, revealing that he has prosocial relationships and he has completely reintegrated into society. The district court did not meaningfully weigh his treatment completion or any other evidence of his rehabilitation. These factors support the early termination of Mr. Stone's supervised release and reveal how he has taken significant and substantial steps to reintegrate successfully into society and reduce any risk he poses to the community. Further, lifetime supervision is greater than necessary to achieve the statutory goals of sentencing, specifically under § 3553(a)(2)(C). Continued supervision in light of Mr. Stone's accomplishments and low risk of reoffending is more punitive than rehabilitative, and is inconsistent with the reintegration goals of supervised release.

Appellate Case: 25-1802   Page: 30   Date Filed: 07/10/2025 Entry ID: 5535937

## <u>CONCLUSION</u>

This Court should reverse the denial of Mr. Stone's motion for early termination of supervised release, or, at the very least, remand the case for testimony on any outstanding factual matters.

Respectfully submitted,

JAMES B. PIERCE
FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF ARKANSAS

By:   /s/ *Anna M. Williams*

Anna M. Williams
Assistant Federal Public Defender
Office of the Federal Public Defender
112 W. Center St., Ste. 300
Fayetteville, AR 72701
(479) 442-2306
anna_williams@fd.org

24

## CERTIFICATE OF SERVICE/COMPLIANCE

I hereby certify that on July 9, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I certify the brief has been scanned for viruses and is virus-free. I further certify the full text of this brief was prepared in Microsoft Word for Microsoft Office 2016, font Book Antiqua, size 14, and that this brief contains 5,103 total words and accordingly complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B).

/s/ *Anna M. Williams*

Anna M. Williams

Appellate Case: 25-1802    Page: 32    Date Filed: 07/10/2025 Entry ID: 5535937